Per Curiam.
The facts stated, and which arfe either admitted or proved, are these. The plaintiff purchased an occupancy or preemption on the south side of French Broad and Plolston, in the county of Blount, in the year 1802, of Herd, who purchased of Franklin, who was in possession on the 6th of February, 1796. In 1807, he procured a survey to be made for 342 acres, two roods, and five chains. The defendants entered a caveat, claiming under a purchase at execution sale, at the instance of Sheril against Drew and Danforth. In August, 1811, a verdict was rendered; and in August, 1812, a judgment was rendered for the defendants. The verdict stated, that the sheriff sold to the caveators by virtue of a judgment and order of sale for $16.50, and on the 3d of June, 1806, that he executed a deed to them for the same. After the sale, Lowry said that he purchased for the complainant, if he would refund what he, Lowry, had advanced for the land, and also $50 due by book account. Waugh and Lowry were partners. At another' time, he said that his purchase would be an advantage to Danforth. The plaintiff sent by Maclin $50 to Lowry, being the principal of the judgment; Maclin carried * the money to Lowry, who received part, perhaps $28, and lent the balance to Maclin. The receipt of $20 is admitted in the answer, which does not deny, nor does it admit that this receipt was for the $50 due by the judgment. But the answer states that what he did receive was not equal to *51 the balance of Slieril’s judgment. The inference is, that the $50 were considered by Lowry to be for the principal of that judgment. The costs were paid, as the plaintiff says, by him, and the answer does not respond at all to this part of the bill.. The plaintiff afterwards paid $100 to Caldwell, who passed it to the credit of the defendants, and informed them of it. The fair inference is this: that the defendants purchased without any previous agreement, before the day of sale, with Danforth, but intending to receive from him the purchase money and to let the lands remain with him, as before the sale; and after the sale, promised to receive the amount of the judgment and the book debt from the plaintiff, and to return him the lands, and actually did receive the same. The promise is well enough stated in the bill; the land is of the value of $1,000 at least. This is not a case within the words used in the act of 1801, ch. 25, § 1: “No action shall be brought whereby to charge any person upon any contract for the sale of lands, tenements, or hereditaments, unless the promise or agreement, &c., or some memorandum, shall be in writing,” &c. The term lands, tenements, and hereditaments does not comprehend an equitable estate, unless brought within it by some statute; therefore.it was that the Assembly passed the act of 1794, ch. 5, § 7, rendering entries liable to be sold by execution, which before that time issued against lands and tenements. For the same reason, an equity of redemption (which is in truth a title to the land as much as a right of preemption is) is not comprehended within the same words used in an execution. For the same reason, * the assignment of an occupancy in the case of Cook and Shute was decided to be good, though not reduced into writing. Cooke’s Reports, 68. For the same reason, the same words in an elegit did not extend to trust estates till made to do so by statute ; and there is not a single instance where, under the British statute of frauds, these words have been extended to any but legal estates. As to the caveat, it is believed that what the bill calls a judgment in August, 1812, was meant of a vérdict, and on advisare in August, 1811. But consider it a judgment rendered in August, 1812, in favor of the caveators. Is the plaintiff bound to apply to equity, as to every right, which, though not actually litigated in the caveat, might have been insisted on in it? However this be, it may, we think, be assumed that a right which *52 could not lawfully be heard and completely remedied in this form of action, could not be bound by it. Could the plaintiff then, as defendant on the caveat, have a full and clear and complete remedy for the right now claimed in this bill, by any defense he could set up under the caveat t The first answer to this question is, that if he really had such remedy, it is a doubtful one, for it is generally understood that the rights examinable in a caveat are such as are derived under the acts of Assembly for the appropriation of vacant lands, which are both of an equitable and legal kind; but not mere equitable rights, existing only in the contemplation of and by the rules of equity, such as contracts which are in equity specifically performable, but in law are the foundations of claims for damages. The jury may inquire of an actual transfer of a preemption right, not whether a promise to transfer is equal to a transfer itself. If doubtful, we will no more compel a defendant to bring forward and risk his cause there, than we will compel a plaintiff to risk his cause in a court of law, where we see that there it is questionable whether he can obtain complete redress. How, in a * court of law, upon the trial of a caveat, shall we get from the defendant a confession of $20 paid, under circumstances whence it may be inferred that it was by way of reimbursement, where by the proof alone it cannot be established. We are of opinion that the plaintiff is not barred by the caveat. Suppose the lands to be sold by the defendant, still, if the plaintiff is entitled to them, and obtain them by the default of the defendants, they ought to render an equivalent for the value of the lands. This conveyance to a third person is only stated in the answer, which is denied in the replication, and the fact is not proved. Ought we, then, setting aside the objections we have noticed, to give relief to the complainant in this cause ? A promise has been made; he has complied on his part by payment of the sums required. He would, if this were a purchase of lands and tenements, have been relievable before the statute of frauds. Equity would, in times precedent to that act, enforce a specific performance of parol agreements. It can do that which is equivalent in cases not within the statute. Wherever in conscience a thing ought to be done, and there is no adequate remedy at law, this court will interfere and cause it to be done. This is the ground upon which specific performance in general proceeds. Such is the principle upon which the court *53 ordered an ancient altar-piece to be specifically delivered to the owner, he not being able to compel such delivery at law. Such is the principle upon which the court ordered the not ringing of a church-bell till a certain time of the day. The church-wardens liad agreed for a valuable consideration not to do so, as it disturbed the plaintiff, whose lodgings were near. This court can also prevent the effects of an unjust judgment. This court can interfere to settle rights which are merely equitable. The power of this court is adequate to the relief asked of it. Is here a case entitled to call for its exercise ? Shall the defendants keep the lands after engaging to return them, if the * plaintiff would do certain acts for their benefit, which he has done and they have accepted? We think the answer is plain, that they ought not to retain these lands, and then it follows that we ought not, under such circumstances, to suffer the defendants to keep them, if so disposed. They must therefore give them up.
Decree that the defendants be perpetually enjoined from any further proceedings to be had upon the caveat in the bill of complaint mentioned, or upon the verdict or judgment rendered in that cause, and that the defendants, on or before the expiration of three months from this day, shall deliver the sheriff’s deed mentioned in said bill to be canceled and retained in his office; and that'the defendants shall be examined on oath before the master respecting all such conveyances as have been made of said lands, in the bill mentioned, or of any part thereof, whether made by themselves or either of them, or by any person claiming under them or either of them ; and that said defendants shall pay the value of said lands to the complainant, if on or before the expiration of the said three months, they, together with all those into whose hands the said lands or any part of them have come by transfer or assignment, either verbal or written, do not execute, in the presence of the clerk and master, a release and quitclaim to all right, title, and claim which they and each of them have, or pretend to have, or set up under the said sheriff sale and deed mentioned in said bill, to the lands described in said deed. Such value the clerk and master shall proceed to ascertain immediately after the expiration of the said three months, should the said release be not executed as aforesaid within that time. And the said value so to be ascertained, he shall report to the next term of this court. The costs of this suit shall be paid by the defendants.